## UNITED STATES v. DORSEY.

*(District Court, S. D. Mississippi, M. D. November Term, 1889.)*

1. POST-OFFICE—ROBBERY FROM MAILS—DECOY LETTERS.
    The use of test or decoy letters by inspectors of mails, for the purpose of ascertaining the depredators upon the mails, is proper and justifiable, as a means to that end.

2. SAME.
    The abstracting, from a letter in a registered mail package, of a silver certificate, by a railway postal clerk, after he has received it as such, and while in his possession, to be conveyed by him as other registered mail, though placed there to give him opportunity to take it, if he so chooses, is a violation of section 5467.

*(Syllabus by the Court.)*

Motion for a peremptory instruction to the jury to return a verdict of not guilty.

*A. M. Lee*, U. S. Atty.

*Calhoun & Green*, for defendant.

HILL, J. The question submitted to the court for decision arose upon the defendant's motion to instruct the jury to return a verdict of not guilty. The indictment makes the following averment:

"That the defendant, George P. Dorsey, on the 15th day of May, 1889, in this district, and within the jurisdiction of this court, the said George P. Dorsey being then and there employed in the postal service of the United States, in the capacity of a postal clerk, a certain registered package numbered 39, post-marked Shellmound, Miss., and directed to Messrs. Eyrich & Co., New York, and purporting to be signed by Mary Winford, in which said letter was inclosed a certain United States silver certificate, of series 1880, lettered B, and numbered 7,537,482, and of the denomination of ten dollars, and which said package had not been delivered to the party to whom it was addressed, unlawfully and feloniously, he, the said Dorsey, the said certificate out of the said package and letter then and there did steal, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

To which indictment the defendant has pleaded not guilty. It is admitted by the district attorney, on the part of the United States, that the package, letter, and certificate were prepared by Pettigrew, then acting as an inspector of the mails of the United States, and whose business was then to detect depredations on the mails of the United States, for the purpose of detecting these depredations on the railway route between Greenwood, in Leflore county, and Jackson, Miss., and not for the purpose of being conveyed by the mail to the persons addressed on

the back of the letter containing said silver certificate, but that it was intended to be placed in the hands of the postmaster at Greenwood, and by him delivered to the postal clerk at Greenwood, to give the postal clerk an opportunity to embezzle said package and letter, and to steal said silver certificate, after he should have received the same, and before the delivery thereof to the transfer postal agent at Jackson, Miss. The evidence of Pettigrew, the inspector, and the postmaster at Greenwood, is that the package known as a "registered" envelope, or package, containing the letter in which was inclosed the certificate described in the indictment, was delivered to the defendant, then acting as the postal clerk on the said route from Greenwood to Jackson, Miss. The uncontradicted testimony further is that the package described in the indictment was delivered by the defendant to the transfer clerk at Jackson, and that it was afterwards delivered by him to said Pettigrew and to McDonald, another inspector in the mail service, engaged with said Pettigrew in the examination of mail depredations on said route. The testimony of said Pettigrew and McDonald is that they opened said package and letter, and found that the same had been opened, and the silver certificate inclosed therein had been abstracted, and taken out of the same. There has been much other testimony on both sides, but which need not be stated in the consideration of the question raised by this motion.

The questions are: *First.* Was this package, letter, and certificate such mail matter as is embraced within the meaning of section 5467 of the Revised Statutes of the United States, under which the indictment is predicated? *Secondly.* Was the same intended to be conveyed through the mails of the United States, and the embezzlement or stealing of which by an employe in the mail service, into whose possession the same might come, constitutes the offense under said statute? All the decisions that I have found on the question of the right and propriety of using test or decoy letters to detect depredations on the mails of the United States, or those of other governments, justify their use, and for the reason that there is no other department of government in which so many persons are so directly interested, but there is some difference of opinion in reference to whether or not a package or letter, so used, and not intended to be received by the party to whom the same is addressed, the embezzlement and stealing of which, with the inclosure, is intended by the statute to be embraced, is the subject of embezzlement and larceny, within the meaning of the statute. The decisions mainly relied upon on the part of the defendant to sustain the motion are the recent decisions of Judge SPEER, of the southern district of Georgia, in the case of *U. S.* v. *Denicke,* 35 Fed. Rep. 407, and of Justice HARLAN, in the case of *U. S.* v. *Matthews,* Id. 890, and the cases referred to in the opinions in these cases. The decision in the first-named case is in point; and, if it is the law, will sustain defendant's motion, and some of the expressions used by the learned justice in the last-named case, if applicable to the facts in that case, would give the position some support; but the only question in that case was, whether it was intended that the letter should be con-

veyed by mail at all, but seized before it entered into the mail. The justice, in the conclusion of the opinion, uses these words:

"My decision rests upon the ground that there was evidence tending to show that the Weidner letter was not intended to be conveyed by mail, and that the district court erred in not leaving it to the jury to determine, under all the evidence, whether it was intended to be so conveyed. The question presented is, I admit, a close one; but my best judgment favors this construction of the statute, as the one most likely to give effect to the will of congress."

I have a very high regard for the legal opinions of Justice HARLAN, and would hesitate long before disagreeing with him, in a case where he was himself fully satisfied with his own conclusions, which I infer he was not in this particular case, though, under the facts in that case, his judgment was right; that is, the question of the intention that the letter should go into the mail, under the facts proven, should have been left to the jury. I also have a high regard for the legal opinion of Judge SPEER, but am compelled to act upon my own convictions in all cases in which I am not bound by the decision of higher tribunals; and, while there are decisions on both sides of the question, I am satisfied that the opinion of Judge BROWN, concurred in by Circuit Judge JACKSON, both of whom are among our most learned and able jurists, announcing the rule which it is admitted is adverse to the motion in this case, is sustained by a weight of both authority and reason which outweighs that produced in favor of their motion, which opinion will be found in the case of U. S. v. Wight, 38 Fed. Rep. 106. The evil intended to be prevented by the statute is different from that in case of a common-law larceny. It is to prevent breaches of trust by those intrusted with the mails of the United States,—a branch of the public service in which almost every man and woman in the United States has a direct interest. The purpose of the statute is that all mailable matter intrusted to any of the employes, officers, or agents in the postal service, shall, without any interference with it, save that required in its necessary transportation, be conveyed from the place where it is delivered to the officers, agents, and employes of the mail service to the point of destination, by the first practicable means; and any unauthorized interference with such mail matter, and its safe and speedy transportation, is a gross breach of trust, if done by any of such employes or agents, and to prevent which was the purpose of congress in the enactment of the statute. The evidence shows that this package and contents were duly placed in the possession of the postmaster at Greenwood, and by him delivered to defendant, as the postal clerk, to be by him carried in the mail, as other mail matter, to be delivered to the transfer agent in Jackson, just as were other packages of the same kind. This is admitted by the defendant. And the package was so carried and delivered; that is, the package and the letter conveyed in it were so carried and delivered, and not intercepted by the inspectors until after the delivery to the transfer agent at Jackson. As to what was done after this, is not embraced in the present inquiry. The uncontroverted facts shown by the proof, in my opinion, establish the fact that the letter and certifi-

cate inclosed in the registered envelope were intended to be conveyed in the mail on that route, within the meaning of the statute, and that it "is no defense to the defendant that the purpose was to give him an opportunity to rifle its contents, if he saw proper to do so, though this was the only purpose of its being placed in his possession. This position, I am satisfied, is maintained by both authority and reason. The question, in nearly all the cases relied upon by defendant's counsel, was as to whether or not the letters or mail matters were intended to be placed in the mail for transportation, and therefore they do not apply to the facts in this case; and, so believing, I feel constrained to overrule the motion of defendant, to peremptorily instruct the jury to return in his favor a verdict of not guilty. I am gratified that this case is in the district court, and that a writ of error can be obtained from the circuit judge, to remove the case to the circuit court, where that court can correct any errors which I have made. I will endeavor to instruct the jury that any errors I may commit will appear in such way as to enable the circuit court to understand and correct them, as I would very much regret that the defendant should suffer for any error of mine; that is, if a verdict should be returned against the defendant; but, if in his favor, my error in this ruling, as to him, will be harmless.